(78 South. 477)

No. 22431.

TYLER v. LEWIS et al.

(Feb. 25, 1918. On Application for Rehearing, April 11, 1918.)

*(Syllabus by the Court.)*

1. DESCENT AND DISTRIBUTION ⬳27—WILLS ⬳10—SUCCESSION—CAPACITY TO TAKE—PRESUMPTION—COURSE OF NATURE.

A child born capable of living is, by a provision of Civil Code, art. 186, and according to the laws of nature, presumed to have been conceived at least 180 days before the birth, and is therefore born in time to receive, by inheritance or testamentary disposition, an estate of a person who died within 180 days before the birth of the child.

2. WILLS ⬳497(7)—CONSTRUCTION—DEVISEE—STATUTE.

The following testament is construed to include a grandchild born several years after the date of the will and on the 172d day after the death of the testator, viz.: "I give and bequeath all the property I may own in Louisiana at the time of my death to my grandchildren, issue of the marriage of my only daughter, Mary, with Alfred E. Lewis."

3. DESCENT AND DISTRIBUTION ⬳71(1) — SUCCESSION—STATUS AS HEIR OR LEGATEE—ACTION AGAINST COHEIRS OR COLEGATEES.

One who asserts title by inheritance or under a will that has been admitted to probate may prove his or her status as an heir or a legatee, as well in a direct action for recognition of title or for partition, against a coheir or colegatee under an universal title, as in probate proceedings.

4. WILLS ⬳260—NULLITY OF TESTAMENT—PRESCRIPTION—APPLICATION.

The prescription of 5 years, that may be pleaded against an action for the nullity of a testament, does not apply to a partition suit in which the plaintiff claims title under and by virtue of a testament and asks that it be interpreted in her favor.

5. TENANCY IN COMMON ⬳15(1) — POSSESSION BY USUFRUCTUARY—PRESCRIPTION.

The possession of property by an usufructuary as such is for the benefit of all of the co-owners, and cannot serve as a basis for the plea of prescription of ten years urged by one or some of the co-owners against another of them.

6. ADVERSE POSSESSION ⬳78—WILLS ⬳522—DISPOSITION TO CLASS—PRESCRIPTION.

A testamentary disposition in favor of a designated class of persons collectively is not, upon its face, a transfer of title to any particular or designated member or members of the class, and therefore cannot serve as a basis for the prescription of 10 years acquirendi causa, pleaded by one or some of the members against another member of the class designated.

7. ADVERSE POSSESSION ⬳74—TITLE—JUDGMENT—PRESCRIPTION.

An ex parte order or judgment, sending heirs or legatees into possession of an estate, is not, and does not purport to be, a transfer of title, and therefore cannot serve as a basis for the prescription of 10 years acquirendi causa.

8. LIMITATION OF ACTIONS ⬳72(3) — PRESCRIPTION—INFANCY.

The prescription of 30 years, referred to in articles 1305, 3499, and 3548 of the Civil Code, is suspended during the minority of a person against whom it might otherwise operate.

9. APPEAL AND ERROR ⬳890 — PLEA OF ESTOPPEL IN APPELLATE COURT—CONSIDERATION.

A plea of estoppel filed originally in an appellate court, based upon allegations of fact antedating the trial of the case, cannot be allowed or considered unless the record contains evidence of the facts alleged.

On Application for Rehearing.

*(Additional Syllabus by Editorial Staff.)*

10. PARTITION ⬳83 — COLLATION — EFFECT OF REFUSAL TO CONSIDER PLEA OF ESTOPPEL.

Where the Supreme Court did not consider the merits of issues raised or attempted to be presented by plea of estoppel filed therein, its refusal to consider the plea would not prevent defendant's request for a collation, by way of opposition to the homologation of the partition proceedings.

Appeal from Civil District Court, Parish of Orleans; George H. Théard, Judge.

Suit by Mrs. Edith L. Tyler against Alfred E. Lewis and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Henry P. Dart, Jr., of New Orleans, curator ad hoc, and Dart, Kernan & Dart, of New Orleans, for appellants. Guion, Lambremont & Guion, of Napoleonville, for appellee.

Statement of the Case.

O'NIELL, J. Jacob R. Wolff, residing in Philadelphia, Pa., made the following testamentary disposition of his property in Louisiana, on the 15th of July, 1875, viz.:

"I give and bequeath all the property I may own in Louisiana at the time of my death to my grandchildren, issue of the marriage of my only daughter, Mary, with Alfred E. Lewis.

"I give and bequeath the usufruct of all the property I may own in Louisiana at the time of my death to my said daughter, Mary, wife of Alfred E. Lewis, and dispense her from giving security."

The testator died in Philadelphia on the 1st of September, 1878, and his will was admitted to probate in New Orleans, where he owned real estate of great value. His surviving daughter and heir at law, Mrs. Mary E. Lewis, had, at the time of her father's death, six children, who are the defendants in this suit, namely, Lucretia Mary Lewis, Alfred E. Lewis, Mary Wolff Lewis, Ellis Lewis, Francis Lewis, and Gerald Lewis.

On the 7th of December, 1878, Mrs. Mary Wolff Lewis and her husband (who had been appointed administrator of the estate of Jacob R. Wolff) filed a petition in the Second district court for the parish of Orleans, in behalf of Mrs. Lewis and of five of her children, all except Gerald Lewis, alleging that she desired to carry out her father's will and to accept the usufruct bequeathed to her in lieu of her rights as forced heir. She formally renounced her rights as forced heir, accepted the will, and prayed to be sent into possession of the property as usufructuary, and that her children, the five named in her petition, be recognized as universal legatees.

An ex parte judgment was rendered accordingly.

Thereafter it was discovered that the name of one of the testator's grandchildren, Gerald Lewis, had been omitted from the petition and judgment, and, on the petition of his parents, a supplemental order or judgment was rendered, ex parte, on the 30th of December, 1878, correcting the 'error by recognizing Gerald Lewis to be one of the six legatees.

The plaintiff was born of Mrs. Mary Wolff Lewis, issue of her marriage with Alfred E. Lewis, on the 20th of February, 1879, that is, within six months after the death of Jacob R. Wolff.

The property bequeathed to the grandchildren of the testator remained in the possession of Mrs. Mary Wolff Lewis as usufructuary, or in the possession of her agent in New Orleans, who attended to the renting of the properties and the collection of the rents for Mrs. Lewis until her death. She died at her home in Philadelphia on the 8th of February, 1915.

Mrs. Tyler filed this suit against her six brothers and sisters on the 7th of February, 1916. Alleging that she was born within six months after her grandfather's death and was therefore conceived before he died, she prayed to be recognized as one of the legatees referred to in his will as his grandchildren. Alleging that the property in New Orleans could not be divided in kind among seven co-owners, she prayed that it be sold at public auction to effect a partition by licitation, and that she have one-seventh of the proceeds. Alleging that the real estate agent in New Orleans had retained one-seventh of all the rents collected subsequent to her mother's death, the plaintiff prayed to be recognized as entitled to the sum held by the agent.

The defendants first filed exceptions or pleas of prematurity, of no cause of action, and of prescription of 10 and 30 years, which

pleas were argued, submitted, and overruled. They then answered the petition, contesting the plaintiff's demands, and afterwards pleaded the prescription of 5 years. The latter plea was also overruled, and judgment was rendered in favor of the plaintiff according to the prayer of her petition.

Having appealed from the judgment, the defendants filed in this court of plea of estoppel. They allege that the plaintiff received from her mother donations of stocks worth $1,200 and a promissory note for $1,000 and testamentary legacies consisting of a trust fund of $5,600 and a farm worth $10,000; that the donations and bequests were given for the express reason that the plaintiff had no share in the Louisiana property of her grandfather's succession, and for the express purpose of compensating her equally with the defendants. They plead that, having accepted the donations and bequests, knowing that the motive of the donor was to compensate the plaintiff for not having a share in the property in Louisiana, she is estopped from claiming also a share in the property in Louisiana. The plaintiff, appellee, has filed a motion to have the plea of estoppel rejected on the ground that the record does not contain any evidence to support the allegations on which the plea is founded.

### Opinion.

[1, 2] Having been born within 180 days after her grandfather's death, the plaintiff was, according to the laws of nature, and according to a presumption established by article 186 of our Civil Code, conceived before her grandfather died. Not content with that presumption, the plaintiff introduced in evidence scientific proof that she was conceived before the date of her grandfather's death; and the fact is not now disputed by the defendants. They rely, in support of their plea that the plaintiff has no cause or right of action, upon the provision of article 1722 of the Civil Code that a testamentary disposition that does not in terms express any time, either past or future, refers to the time when the will was made. They argue that the testator's expression, "I give and bequeath all the property I may own in Louisiana at the time of my death to my grandchildren, issue of the marriage of my only daughter, Mary, with Alfred E. Lewis," did not expressly or in terms refer to the future, and therefore did not include grandchildren born subsequent to the date of the will.

Article 1722 of the Civil Code is a rule of interpretation of wills—a method of ascertaining the intention of the testator—not a rule for determining when a will shall have effect or be put into execution. Article 1721 of the Civil Code declares that a testamentary disposition couched in the future tense refers to the time of the death of the testator. In the case before us the testator left no doubt that the property he bequeathed to his grandchildren was, not what he owned at the time he made his will, but what he might own at the time of his death; and we think it is equally certain that the grandchildren to whom he intended to give, and did give, all of the property that he might own at the time of his death were those living at the time of his death. That is the interpretation put upon the will by the defendants; for one of them, Francis Lewis, who was born on the 21st of April, 1876, more than 9 months after the date of the will, has been and is yet recognized as one of the legatees.

The plaintiff was entitled to be considered, with regard to her interest in her grandfather's succession—in fact, with regard to any matter concerning her welfare—when he died, as if she had been born before he died. Rev. Civ. Code, arts. 29, 953, 954, 957, 1473, 1482; Marcade, des Succession, vol. 3, p. 36; Toullier, des Succession, vol.

2, pt. 3, p. 57; Fisk v. Fisk, 3 La. Ann. 497; Lewis v. Hare, 8 La. Ann. 379.

[3] The defendants contend that, in any event, the plaintiff's claim must be limited to one-seventh of two-thirds of the property in dispute. The contention is founded upon the fact that the plaintiff's mother, being a forced heir of her father, was entitled to the légitime of one-third of his estate, and the disposable portion of what he attempted to bequeath to his grandchildren was therefore only two-thirds. It is argued that the acceptance by Mrs. Mary Lewis of the usufruct in lieu of her rights as a forced heir operated as an acceptance of her father's succession and a transfer by her of her légitime of one-third of the estate to the six defendants to whom she referred in her petition. The basis of the argument is that article 1002 of the Civil Code declares that a donation, sale, or assignment, made by a coheir, of his right of inheritance, either to a stranger or to his coheirs, is considered on his part an acceptance of the inheritance, and that article 1003 declares that the same may be said, first, of a renunciation, even if gratuitous, made by an heir in favor of a coheir or of coheirs, and, second, of a renunciation made by an heir to his coheirs indiscriminately, if he receives a price for the renunciation. Our answer to the argument is that the renunciation made by Mrs. Mary Lewis of her rights as a forced heir was not made to or in favor of any designated heir or heirs; nor was any price or consideration received by her. Her renunciation was not a donation or an assignment of her right of inheritance, and it could not possibly be considered an acceptance on her part of anything except the usufruct, which she expressly accepted in lieu of her rights as a forced heir. The renunciation by Mrs. Mary Lewis of her rights as a forced heir inured to the benefit of all of the universal legatees, or legatees under an universal title, the plaintiff as well as the defendants. There is therefore no merit in their contention that her claim is limited to one-seventh of two-thirds of the estate.

Taking up now, in their order, the various pleas or exceptions urged by the defendants, we find no merit in the plea of prematurity of the action. The plea is founded upon the contention that the plaintiff should have made proof of her status and rights in the premises, and should have had them recognized, in probate proceedings, before instituting an action for partition or for recognition of her interest in the property. No good purpose could have been accomplished by such circuitous proceedings on the part of the plaintiff. The will of her grandfather had been admitted to probate and ordered executed. A judgment rendered subsequently, in a probate proceeding recognizing the plaintiff as one of the legatees and ordering her sent into possession as such, would not have been binding upon the defendants in the present suit, unless they had been cited and made defendants in such probate proceedings. Their being cited and made defendants once is enough to determine the plaintiff's status and rights in the premises. It is well settled that one who asserts title by inheritance, either legal or testamentary, may prove his or her status as an heir or a legatee as well in a direct action for recognition of title, or for partition of the estate, as in probate proceedings. In fact, an allegation and the proof of title on the part of the plaintiff is essential to maintain an action for partition. See Thibodeaux v. Thibodeaux, 112 La. 906, 36 South. 800. An ex parte judgment, recognizing the plaintiff's title, would not furnish proof against a defendant in such case, disputing the plaintiff's title.

Counsel for defendants say that the maxim "Le mort saisit le vif" applies, under article 940 of the Civil Code, only to legal heirs,

testamentary heirs, instituted heirs and universal legatees, but not to particular legatees nor to legatees under an universal title. The article does not declare that a legatee under an universal title is not—although it declares that universal legatees are, and that particular legatees are not—vested with seisin, of right immediately after the death of the testator. The only forced heir in this case had renounced her rights as such; and there was no other heir, nor universal legatee, from whom the plaintiff could demand possession. Her demand in this suit is made against the only parties upon whom the demand could be made.

[4] No argument has been advanced in support of the plea of prescription of 5 years. We assume that the plea is based upon article 3542 of the Civil Code, declaring that actions for the nullity of testaments are prescribed by 5 years. This, however, is not an action for the nullity of a testament. The plaintiff is claiming under and by virtue of the testament.

[5-8] The prescription of 10 years does not apply, for two reasons: First, because the possession of the property held by the usufructuary inured to the benefit of all of the joint owners, the plaintiff as well as the defendants; and, second, because the testament under which the defendants claim the property did not purport to transfer the property to them alone, and the ex parte judgment, recognizing them as the legatees, was not, and did not purport to be, a transfer of title.

The plea of prescription of 30 years is founded upon articles 3548 and 3499 of the Civil Code. Article 3548 declares that all actions for immovable property, or for an entire estate, as a succession, are prescribed by 30 years; and article 3499 provides that the ownership of immovables is prescribed for by 30 years without any need of title or possession in good faith. Article 1305 of the Code makes it plain that the owner or owners of only an undivided interest in real estate, having possession of the whole, may acquire, by the prescription of 30 years, the interest of a co-owner not in possession.

Without considering the question whether the possession held by the usufructuary for more than 30 years could inure to the benefit of the defendants alone and operate to the prejudice of the other co-owner, we are of the opinion that the prescription of 30 years, being suspended during the minority of the plaintiff, only commenced its course at the date when she attained her majority, and that it was interrupted by the service of citation in this suit within 30 years from that date.

Article 3521 of the Civil Code declares that prescription runs against all persons unless they are included in some exception established by law; but the next following article provides that prescription does not run against minors except in the cases provided by law, and article 3554, in substance, repeats the provision. The cases in which prescription does run against minors are specified in article 3541 of the Code, in the section that treats of the prescription which operates a release from debt; and the only prescriptions specified are those of 1, 3 and 5 years. As it is not specified or provided in the Code, or elsewhere in the law of this state, that the prescription of 30 years runs against minors, that prescription must be included in the general terms or provisions of articles 3522 and 3554 that prescription does not run against minors, except in the cases specified or provided by law.

Counsel for the defendants cite the decision in Smith v. Gibbon, 6 La. Ann. 687, to the effect that minority does not interrupt, but only suspends, the course of prescription. And from that they argue that the prescription of 30 years, which was only suspended during the 21 years of the plaintiff's minority, had only 9 years longer to run to complete its course. There is no occasion here, however,

to observe a distinction, or recognize the difference in effect, between an interruption and a suspension of prescription, as there was in the case cited. There the prescription of 10 years acquirendi causa was pleaded against a plaintiff who had been of age only 3 years and had derived title by inheritance from her mother, during whose lifetime the defendant had held adverse possession more than 7 years. It was held that, as the prescription that was running against the plaintiff's mother was only suspended, not interrupted, by the plaintiff's minority, it resumed its original course when the plaintiff attained the age of majority and had then only three years to run. The doctrine of the decision is that prescription must begin its term anew if it has been interrupted, but not if it has been merely suspended, after having commenced its term. That doctrine does not warrant our holding that the term during which prescription was suspended on account of the plaintiff's minority should be added or tacked to the term when prescription operated against her. Such a ruling would altogether do away with the suspension of prescription during minority. The doctrine of the decision cited does not apply to this case, for the simple reason that there was no one against whom prescription had operated at all when it commenced to operate against the plaintiff.

There is one case in our jurisprudence where it was held that the prescription of 30 years against an action of partition, under article 1305 of the Civil Code (article 1228 of the Code of 1825), was not suspended during the minority of the heir against whom it was pleaded and maintained. We refer to the decision in Rankin, Tutor, v. Bell et al., 2 La. Ann. 486. The only reasons assigned for the ruling were that article 1228 was not put into the chapter (of the Code of 1825) treating of prescription, and that, "from its plain import," the court was of the opinion that the limitation it established was not suspended by minority.

The manifest reason why article 1305 of the Code appears, not in the chapter that treats of prescription, but in the chapter dealing with the partition of successions, is that the article does not establish another prescription of 30 years, but merely affirms that the prescription of 30 years (established by article 3499) applies to co-owners. That is repeated in article 3515, in the chapter on prescription, where it is said that the owner of half of an estate can acquire the other half by the prescription of 30 years.

In Rankin, Tutor, v. Bell et al., the court construed article 1305 (1228) as if it stood alone and embraced all of the law on the subject dealt with. No reference was made to article 3522 nor to article 3554 of the Code (articles 3488 and 3519, respectively, of the Code of 1825), declaring that prescription did not run against minors except in the cases specified by law. The case was referred to in Rhodes v. Cooper, 113 La. 604, 37 South. 530; but the court then found it unnecessary, and expressed an unwillingness, either to affirm or overrule the decision. As the decision is not founded upon satisfactory reason—is in fact contrary to the plain language of the Code—we are constrained to overrule it. Our conclusion is that the prescription of 30 years was suspended during the plaintiff's minority, and therefore that the plea cannot prevail.

[9] Referring now to the defendants' plea of estoppel, we find that the plaintiff's contention that there is no evidence to support the allegations on which the plea is founded is correct. When the defendants offered evidence in the district court to prove that Mrs. Mary Lewis had construed her father's will so as to exclude the plaintiff as a legatee, being the only purpose for which the evidence was offered, the plaintiff's attorney urged, and the court maintained, the objection that the evidence was irrelevant to any issue presented by the pleadings. The de-

fendants did not then plead an estoppel, nor offer to amend their pleadings in the district court. They ask now that the case be remanded to the district court, if necessary, for the introduction of the evidence that was excluded when, in reality, the evidence was not admissible under the pleadings. We are unwilling to establish the precedent of remanding a case for the introduction of evidence of facts which, if true, were known by all of the parties to the suit before it was filed. One of the defendants, a man 43 years of age, was present and testified at the trial, and it appears that he had assisted in preparing for the defense of the suit. There is no consideration of equity to prompt us to depart from the rule that a plea of estoppel filed in an appellate court, based upon allegations of facts antedating the trial of the case, cannot be allowed or considered unless the record contains evidence of the facts alleged.

The judgment appealed from is affirmed.

## On Application for Rehearing.

PER CURIAM. It is said in the application of the defendants for a rehearing that we should have reserved their right to compel the plaintiff to collate, and to compel her to account for the property and money received from her mother, by way of opposition, if necessary, to a homologation of the partition proceedings to be had hereafter in this case.

[10] As we did not pass upon or consider the merits of the issues raised or attempted to be presented by the plea of estoppel filed originally in this court, our refusal to consider the plea should not have the effect of preventing the defendants' asking for a collation, by way of opposition to the homologation of the partition proceedings.

The decree heretofore rendered is therefore amended so as to reserve whatever rights the defendants have or may have to require the plaintiff to collate, by way of opposition to a homologation of the partition proceedings to be had herein. The petition for a rehearing is denied.