GOTHARD, Judge.
This is an action for tort damages brought by plaintiff, Mark Kozlowski, on behalf of his minor son, Matthew Kozlow-ski.
The plaintiff father sues the State of Louisiana, through the Department of Health and Human Resources (DHHR) and other defendants[1] for negligence in failing to protect his minor son.
*1262 The plaintiff father’s minor son suffered third degree burns to his legs, feet, groin area, and abdomen from being placed by his mother, according to plaintiffs reply brief, into a tub of scalding water resulting in disfigurement and the loss of most of his toes, and a significant loss of use of his legs and feet.
The father moved out of the home during the early months of 1983, leaving the child in the physical custody of the mother. The plaintiff father alleges that after physically separating from the mother, he reported his suspicions of abuse by the mother to the DHHR and the St. Charles Parish Sheriffs Office. The father alleged that the mother had a history of prostitution, drug addiction, and violent behavior. The father alleges that no action or investigation of the reports were made by either the DHHR or the parish sheriffs office in response to his complaints. On November 8, 1983, after the child was found severely burned, an instanter order was granted by the Judge placing the child in the temporary legal and physical custody of DHHR. We are unable to ascertain if there were further proceedings relative to a child in need of care determination. On December 30, 1985 legal and physical custody was returned to the father.[2] On August 18, 1986 this suit was filed.
The DHHR and the sheriffs office each filed a number of exceptions to the plaintiff father’s suit, one of which was an exception of prescription, on the grounds that the minor’s action had prescribed on its face in that it was filed more than one year after the date of the minor’s injuries.
In opposition to the exception of prescription, plaintiff relying on LSA-C.C. art; 3469 (“Prescription is suspended as between ... parents and children during minority, tutors and minors during tutorship ... ”), and assuming that a state of tutorship was created once the state took legal custody of the minor, argued that the action was not barred by the one-year period of termination, because prescription was suspended during the time the state had custody of the child. Plaintiff also argued that when the state took custody of the minor, it created a conflict of interest, being both custodian and potential tort obligor at the same time. Further, since, in such a circumstance, the state could hardly be expected to safeguard the child’s rights by suing itself, a constitutional suspension of prescription should be invoked lest the minor lose his rights by virtue of being afforded no true opportunity to enforce them. LSA-Const. Art. 1, Sec. 22.
The trial court sustained the exception of prescription and dismissed plaintiff’s action with prejudice against all defendants, stating that the “mere fact that the Department takes a child into protective custody doesn’t bar anyone from suing the Department because of alleged negligence or failure to perform certain duties that it had towards the child.” This appeal followed.
The plaintiff father asks us to determine the correctness of the trial court’s ruling on the exception of prescription, and presents for our consideration these issues, whether:
(1) In Louisiana, are the rights of a minor child vis-a-vis the entity with legal custody dependent upon a third party without legal custody?
(2) Is prescription suspended as to the minor child for causes of action it may have against his legal custodian for the duration of such legal custody?
(3) Is a minor child denied access to the courts, due process and equal protection if, on the one hand, the parents are declared unfit for legal custody but, on the other hand, the child’s proper representative is held to be one of the parents, rather than the legal custodian, thus making the child depend, for the preservation and protection of his rights, upon one adjudged incompetent?
Without in any way passing on the merits and for the reasons set forth more fully below, we hold that, under the facts of this *1263 case, prescription did not begin to run against the minor until he was released from the legal and physical custody of the defendant DHHR on December 30, 1985.[3] Therefore this legal demand of July, 1986 was timely. We so hold despite the lack of any provision of positive law which expressly authorizes a court to grant a suspension of prescription under the facts described; rather our decision applies to an insufficiency of the law and relies upon principles of reason and equity. LSA-C.C. art.[4]
The specific issue which we have considered is whether the year within which this plaintiffs minor son had to bring his tort action for personal injuries allegedly caused by the negligence of defendants, LSA-C.C. art. 3492,[5] is suspended during the period in which the minor’s legal and physical custody was placed by the Juvenile Court of St. Charles Parish in defendant DHHR.
Article 3467 of our Louisiana Civil Code provides, “Prescription runs against all persons unless exception is established by legislation.” Article 3468 provides “Prescription runs against absentees and incompetents, including minors and interdicts, unless exception is established by legislation.” One such exception is established by article 3469 wherein prescription is suspended as between “... the spouses during marriage, parents and children during minority, tutors and minors during tutorship, and curators and interdicts during interdiction.”
It is the plaintiff-father’s position that article 3469 suspended prescription as to his minor son’s action once his son was adjudicated to the legal and actual custody of the DHHR and until his son was released to him on December 30, 1985, thus making timely his present claim filed on July 18, 1986.
The defendant DHHR argues that its relationship to the plaintiff father’s minor son during the minor’s placement in their custody was neither that of tutor nor parent, so that suspension of prescription under article 3469 is inapplicable. Rather, the defendant DHHR argues that the plaintiff father was the only party with the proper procedural capacity to bring the instant action on behalf of his minor son under article 683 of the Louisiana Code of Civil Procedure.[6] Therefore, defendants argue that it was the plaintiff father’s failure to timely institute this action which allowed the minor’s action to prescribe. Defendants suggest that the minor’s remedy is against his father’s failure to timely institute suit, not defendants’. LSA-C.C. art. 340; LSA-R.S. 9:571.
This argument overlooks the fact that the circumstances in the present case do not seem to squarely fall within the purview of Civil Procedure article 683, which speaks to situations when legal and actual custody of the minor is vested either in both parents, or one parent, or when the *1264 court appoints a tutor to safeguard the legal rights of the minor. It does not speak to the situation, as here, where, (1) due to the failure of parental responsibility resulting in the state’s assuming physical and legal custody and (2) the alleged prior failure of DHHR to investigate complaints of child abuse, the child has been adjudicated to the state’s custody and no tutor has been appointed to him. Who then was the proper party to safeguard the legal rights of the plaintiff’s minor son during the period the minor was in the custody of the defendant DHHR?
With reference to children adjudicated to the state’s custody, Louisiana law does not expressly answer the question of the proper representative in an action such as the instant one under the present facts. Accordingly, as stated, we have proceeded to answer this question in a manner which we feel is consistent with reason and equity. LSA-C.C. art. 4.
We observe from article 13 of our Louisiana Code of Juvenile Procedure that the “parent” of the minor child when in the legal and actual custody of the DHHR is the DHHR. Article 13 reads:
(11) “Parent” means either parent if they are married and living together. If one parent is dead, or if the parents are divorced, legally separated, separated in fact, or unmarried, it means a parent or person having legal or actual custody of the child. If no parent has legal or actual custody, it means the person, institution, agency, or association of persons having legal or actual custody.
See also LSA-R.S. 13:1600(3) (“Parent is the legal or natural father, mother, tutor, or custodian of a child.”).
We further observe from the general provisions of our Louisiana Revised Statutes applicable to juvenile courts, that “legal custody” of a minor is a legal status created by court order and defined to mean:
11. “Legal custody” means a legal status created by court order which vests in a custodian the right to have physical custody of the child or minor and to determine, where and with whom he shall live within or without the state, and the right and duty to protect, train, and discipline him and to provide him with food, shelter, education and ordinary medical care, all subject to the powers, rights, and duties and responsibilities of the guardian of the person of the child and subject to any residual parental rights and responsibilities; provided that when the state of Louisiana is the party to whom custody is given, the state may authorize necessary medical treatment and/or emergency major medical treatment, if the attending physician certifies that the medical care is necessary to treat the health problem or it is an emergency medical situation. An individual granted legal custody shall exercise the rights and responsibilities personally unless otherwise authorized by the court. LSA-R.S. 13:1569(11)
We note that the defined responsibilities of the “legal custodian” are subject to those of the “guardian of the person of the child” and any “residual parental rights.”
“Guardian of the person of the child” is defined to include representation of the minor in legal actions. LSA-R.S. 13:1569(12). It is a common law term, In Re Knight, 212 La. 357, 31 So.2d 825 (1947), which possibly best equates to Louisiana’s civil law, for purposes of the instant case, with that of the regime of tutorship. See generally, 85 ALR 3d 162, 178 (Guardian and Ward).
“Residual parental rights” are defined to mean:
(5) “Residual parental rights” are those rights and responsibilities remaining with the parents after the legal transfer of custody of the child, including but not necessarily limited to right of visitation, consent to adoption, the right to determine religious affiliation, responsibility of support, and the right of inheritance from said child. The said child and his lawful descendants are relieved of all of their legal duties and divested of all their legal rights with regard to the parent or other relatives except the right of the inheritance. LSA-R.S. 13:1600(5)
*1265 The defendants argue that by virtue of the above quoted definitions of “legal custody” and “residual parental rights” that the plaintiff was responsible for instituting his minor son’s legal action even during the period of time that the minor was in the custody of DHHR. We find nothing in the given definitions of “legal custody” or “residual parental rights” to positively support defendants’ argument.
In view of the legally defined status of the defendant DHHR as the “parent” of the minor when the minor is adjudicated to its legal and physical custody, LSA-C.J.P. art. 13(11), and in view of the particular facts of this case, we feel it as reasonable here, that the defendant DHHR had, at least, a like responsibility to have instituted the minor’s action for tortious injury. However, because the defendant DHHR can hardly be expected to sue itself during the period of time that the minor child was in its legal and physical custody, we hold that on the facts of this case a suspension of prescription during the period of said custody is appropriate. We think the values at issue here are analogous to those which permit suspension of prescription between tutors and minors during tutorship and between parents and minors during minority. LSA-C.C. art. 3469. To conclude otherwise would leave the safeguarding of this minor’s rights to his natural parents, who, at least during the period of their minor son’s custody with DHHR, were incapable of this responsibility — thus the assumption of legal and physical custody by DHHR.[7] We realize in so holding, we are formulating a procedure not specifically provided for, but also not expressly prohibited under the Code of Juvenile Procedure or other statutory provisions. In such instances, we would prefer to err on the side of the child than against.[8]
We distinguish as inapplicable those cases cited by defendants in which a parent is alone the proper plaintiff to sue for the wrongful death of his child formerly in the custody of the state because the wrongful death action is based solely on the familial relationship, LSA-C.C. art. 2315.2, and the minor’s former legal custody in the state has no bearing on such an action. Nor can we adopt Cosey v. Allen, 316 So.2d 513 (La.App. 1 Cir.1975) as authority that plaintiff herein was the only proper plaintiff.
In Cosey, the mother lived with her five children in Louisiana, and the father lived in California. Upon the death of three of the children, a result of an accidental fire in their home, the father sued for damages on behalf of the two surviving children. The court held, on the basis of Civil Code of Procedure article 683, that where the father and mother of the children had never been judicially separated or divorced, the father alone possessed the authority to sue to enforce the rights of the two surviving children, even though they had not lived with their father for some time,
We distinguish Cosey from the present facts, finding, that, unlike here, there was no adjudication of the minor children to the physical and legal custody of the state. Nor was there any indication that the parents were absent, or otherwise incapable of assuming the responsibility to protect their children’s legal rights. In addition, there was no allegation that agency failure to follow up on child abuse reports and to remove the children from an abusive envi *1266 ronment possibly allowed their injuries. Rather, we find more closely analogous to the present facts the situation described in Corsey v. State Dept. of Corrections, 375 So.2d 1319 (La.1979).
In Corsey, ' supra, suit was instituted against the State Department of Corrections for alleged tortious injury sustained by a prisoner at the penitentiary. Both lower courts concluded that dismissal on the defendant’s exception of prescription was correct. The Supreme Court, applying the rule of “contra non valentem agere nulla currit praescriptio” (no prescription runs against a person unable to bring an action), reasoned that the same wrong doing of the defendant that gave rise to the cause of action, also made it impossible for the plaintiff Corsey to avail himself of his legal remedy, because of the tort caused mental incapacity. Therefore, the court held, that the rule of “contra non valen-tem” operated to preclude running of prescription. The court’s conclusion to recognize a judicial exception to prescription in that case was additionally based on the policy against allowing the defendant to profit by its own wrong doing — a thing inadmissable in law.
Similarly, in the case sub judice, we find untenable the position asserted by defendants, that prescription could run against this minor during the period he is in the legal and physical custody of the defendant DHHR when, allegedly due to the defendants’ negligent failure to investigate the plaintiff’s original complaints of the child’s abuse, the injury which gave rise to the cause of action occurred. To permit prescription to run under the present facts would allow the state to possibly insulate itself against suit for its alleged negligent investigation of reports of child abuse and neglect, by its subsequent custody of the minor, extending beyond the prescriptive period. The minor under these circumstances is doubly helpless to have suit filed on his behalf by virtue both of his age incapacity and also of his doubtless dependency for protection of such rights on the saiiie entity whose alleged negligence has allowed the child to come into its custody so severely injured. Such an outcome is indefensible in view of the purpose of our Louisiana Code of Juvenile law which is to further the welfare of the child.
Finally, we observe that the minor child’s parents are now divorced and he is no longer in the custody of the DHHR. Accordingly, the proper party to proceed with the instant action on the minor’s behalf is his duly appointed tutor. LSA-C.C. arts. 246, 248. In this regard, we further observe that no person may be appointed tutor who is judicially determined to be unfit for appointment. Accordingly, in the event the plaintiff father is unable to qualify for the appointment, then the court below must appoint another to bring the instant action. LSA-C.C.P. art. 4231(6).
For the reasons assigned, we reverse the judgment of the trial court which sustained the exception of prescription as to all defendants, and we remand the case to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
GRISBAUM, J., dissents with written reasons.

. By plaintiffs First Supplemental and Amending Petition, made additional defendants were: State of Louisiana, as the employer of certain Deputy Sheriffs of St. Charles Parish; Charles Wilson, in his official capacity as Sheriff of St. Charles Parish; Johnny Marino, successor in interest to Charles Wilson; and/or any other entity or individual in control and custody of the funds of St. Charles Parish Sheriffs Office, either presently or in the future.

. Apparently, this was the first time the father ever had been awarded custody through any court.

. While we do not hold on the merits of this case, we do note that on the facts alleged, if proved, the possibility of agency negligence sufficient to allow the minor to recover for the agency’s failure to follow up on child abuse reports and to remove him from an abusive environment. See for instance, Turner v. District of Columbia, 532 A.2d 662 (D.C.App.1987).

. Because Louisiana is a civil law jurisdiction, the absence of express law does not imply a lack of authority for courts to provide relief. In all civil matters, where positive law is silent, the judge is bound by the Civil Code to proceed and decide according to equity. LSA-C.C. art. 4.

. LSA-C.C. art. 3492 provides:
"Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained."

.LSA-C.C.P. Art. 683. Unemancipated minor
An unemancipated minor does not have the procedural capacity to sue.
Except as otherwise provided in Article 4431, the tutor appointed by a court of this state is the proper plaintiff to sue to enforce a right of an unemancipated minor, when (1) one or both of the parents are dead, (2) the parents are divorced or judicially separated, or (3) the minor is an illegitimate child.
The father, as administrator of the estate of his minor child, is the proper plaintiff to sue to enforce a right of an unemancipated minor who is the legitimate issue of living parents who are not divorced or judicially separated. The mother, as the administratrix of the estate of her minor child, is the proper plaintiff in such an action, when the father is a mental incompetent or an absentee.

. We observe that in this particular case, the DHHR saw fit to remove legal and physical custody from both parents on the day the child sustained the almost critical injuries. Why did they make this decision? However tragic an injury sustained by a minor child the state does not, in the vast majority of cases, intervene and remove the child, physically and legally, from the custody of its parents. Once custody was removed, and for the entire period that custody remained with DHHR, there is no evidence in the record that the father made any important decisions regarding the welfare of the child. He did not determine, nor did he participate in the decision of DHHR as to: the type of treatment the child would receive; when the child would receive said treatment; how long the treatment would continue, and so forth. In fact, it appears that the father determined nothing relative to the child’s present and future while the child was in custody.

. Compare, Gordon v. Alexandria Coca-Cola Bottling Co., 408 So.2d 1007 (La.App. 3 Cir.1981) writs denied 412 So.2d 86. (Minor’s tort action prescribed for whom no tutor had been appointed.)